UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LOREN WAYNE TIDWELL,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY B. MARTHAKIS, et al.,<br><br>    Defendants. | CAUSE NO. 3:20-CV-484-MGG |

OPINION AND ORDER

Loren Wayne Tidwell, a prisoner without a lawyer, filed a motion to compel the defendants to respond to his interrogatories and requests for production and a motion for discovery sanctions. Under the Federal Rules of Civil Procedure, "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "Rule 26 vests this Court with broad discretion in determining the scope of discovery, which the Court exercises mindful that the standard for discovery under Rule 26(b)(1) is widely recognized as one that is necessarily broad in its scope in order to allow the parties essentially equal access to the operative facts." *Scott v. Edinburg*, 101 F. Supp. 2d 1017, 1021 (N.D. Ill. 2000). The court has "broad discretion over discovery matters." *Spiegla v. Hull*, 371 F.3d 928, 944 (7th Cir. 2004).

Tidwell proceeds on an Eighth Amendment claim against Dr. Marthakis, Nurse Turner, and Nurse Monaco for acting with deliberate indifference to his constipation

and stomach pain. ECF 73. According to the amended complaint, Tidwell complained of pain in his stomach, hernia, legs, and lower back, starting in June 2018. Dr. Marthakis provided some treatment but did not change his medication or treatment despite Tidwell's continued reports of pain. From November 17 through November 27, 2019, Dr. Marthakis, Nurse Turner, and Nurse Monaco misdiagnosed his stomach pain as illicit drug use and refused to consider or treat for any alternative diagnoses.

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. "[I]n order to state a section 1983 claim against prison officials for failure to protect, [a plaintiff] must establish: (1) that he was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to his health or safety." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010).

The court first addresses the motion for discovery sanctions. According to the Federal Rules of Civil Procedure, if a party fails to satisfy their discovery obligations, the party seeking discovery may move for an order compelling discovery compliance. Fed. R. Civ. P. 37(a)(3). If a party fails to comply with an order compelling discovery compliance, the party seeking discovery may then move for discovery sanctions. Fed. R. Civ. P. 37(b). Here, the court has not previously entered an order compelling the defendants to comply with their discovery obligations. Therefore, the motion for discovery sanctions is denied as premature.

Similarly, the defendants argue that the court should deny the motion to compel because Tidwell failed to confer in good faith regarding the discovery disputes prior to filing it. The Federal Rules of Civil Procedure require parties to certify that "the movant has in good faith conferred to attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." However, the local rules make an exception for "those motions brought by or against a person appearing pro se." N.D. Ind. L.R. 37-1(b). Because Tidwell proceeds pro se, he was not required to confer in good faith as a prerequisite to filing a motion to compel.

## Interrogatories

In the motion to compel, Tidwell argues that the defendants provided boilerplate objections rather than substantive answers to nearly all of the interrogatories. The sets of interrogatories directed at each of the defendants are substantially identical, and the defendants' responses are similarly substantially identical. The court observes numerous themes throughout these objections. First, for several interrogatories, the defendants lodge objections while ultimately provided a substantive response. For example:

> **Interrogatory No. 5:** What were the nature of the meetings/interactions with Plaintiff Tidwell?
>
> **ANSWER:** Objection, the term "interactions" is undefined, vague, overly board, and subject to multiple interpretations. Further objecting, Interrogatory No. 5 is not reasonably calculated to lead to the discovery of admissible evidence and is not reasonably limited to time. Additionally, Interrogatory No. 5 is better suited to a deposition. Notwithstanding and without waiving said objections. Defendants indicates that the nature of these interactions is that she saw the Plaintiff as a patient on several occasions.

3

Given that the defendants in these instances have provided reasonably complete substantive responses, the court declines to compel answers to these interrogatories.

Next, on several occasions, the defendants refer to medical records rather than providing a substantive response to the interrogatory. For example:

> **Interrogatory No. 12:** Please describe, with specificity, what treatment or treatments were given to, or used in Tidwell's case during the period of July 2018 and November 2019.
>
> **ANSWER:** Objection. The phrases "treatment or treatments" and "Tidwell's case" are each undefined, vague, overly broad, and subject to multiple interpretations. Further objecting, Interrogatory No. 12 is not reasonably calculated to lead to the discovery of admissible evidence and is not reasonably limited in time. Notwithstanding and without waiving said objections, Defendant indicates to see Plaintiff's medical records.

Fed. R. Civ. P. 33(d) allows parties to refer to business records in lieu of providing substantive responses "if the burden of deriving or ascertaining the answer will be substantially the same for either party." With respect to these interrogatories, Tidwell offers no explanation as to why reviewing his medical records disproportionately burdens him and does not suggest that he seeks information that cannot be obtained through review of the medical records. Consequently, the court declines to compel answers where the defendants have referenced medical records in lieu of providing substantive responses.

At the various points, the defendants object on the basis of vagueness and argumentativeness.[1] For example:

---

[1] An argumentative question is "a question in which the examiner interposes a viewpoint under the guide of asking a question." BLACK'S LAW DICTIONARY (11th ed. 2019).

**Interrogatory No. 7:** Are you familiar with the specifics of Tidwell's case?

**ANSWER:** Objection. The term "case" is vague, overly broad, and subject to multiple interpretations. Further, Interrogatory No. 7 as a whole is vague. Notwithstanding and without waiving said objections, Defendant indicates that she understands that Mr. Tidwell's allegations in this matter surround allegations that he did not receive adequate medical care pertaining to a hernia and/or bowel obstruction.

* * *

**Interrogatory No. 24:** As Tidwell was in fact suffering from a serious and possibly life-threatening bowel obstruction, and [was] not high, was proper medical treatment followed by forcing "Narcan" on him? If so, describe how said treatment was proper.

**ANSWER:** Objection. Defendant objects to the form of interrogatory as it supposes certain facts and presupposes that Plaintiff was not, in fact, on a narcotic drug at the time the Narcan was administered. Notwithstanding and without waiving said objection, Defendant indicates that a review of Plaintiff's medical records reflects that -- particularly given documented evidence that Plaintiff used certain illicit substances -- at the time that Narcan was administered to Plaintiff, there were medical reasons to do so.

**Interrogatory No. 25:** As Plaintiff Tidwell did in fact require emergency surgery, requiring hernia repair and a bowel re-section, was the delay in treatment, forced "Narcan" administration, and refusal to treat complaints of pain and other medical problems by Tidwell proper treatment and in keeping with the accepted medical practice and Wexford's protocol's?

**ANSWER:** Objection. Defendant objects to Interrogatory No. 25 as it presupposes certain facts which Plaintiff has no foundation to presuppose -- particularly, that there was a delay in treatment and that Narcan administration constituted a delay in treatment. Further objecting, Wexford is not a party to this action and as such, its protocols are not at issue. Notwithstanding and without waiving said objection, Defendant indicates that her treatment of Plaintiff was adequate at all times and in all respects.

To the defendants' point, the manner in which Interrogatory No. 7 is written presents the reader with unreasonably vague terms. The term "case" might reasonably refer to

this legal case or Tidwell's course of medical treatment with respect to stomach pain and constipation. The term "specifics" is even more ambiguous. For example, assuming that "case" refers to Tidwell's course of treatment, it is unclear whether the focus of this interrogatory is limited to the information included in the medical records, whether it merely applies to the defendant's specific role in Tidwell's treatment, or whether it broadly concerns each occurrence related to Tidwell's medical condition from its onset to its resolution.

Further, Interrogatories Nos. 24 and 25 are unreasonably argumentative. Squarely answering these interrogatories would require the defendants to concede that their administration of Narcan was medically inappropriate, a contention that is contradicted by portions of the medical records and thus appears to be a genuinely disputed material fact. The court declines to compel answers to interrogatories that are unreasonably vague or that would require the defendants to concede material factual issues that remain in dispute.

Nevertheless, Tidwell's motion to compel is well-taken with respect to two interrogatories.

> **Interrogatory No. 3:** Between July 2018 and November 2019, did you work for the private health care company Wexford at the Indiana State Prison in Michigan City, Indiana?
>
> **ANSWER:** Objection. The term "Wexford" is undefined, vague, overly broad, and subject to multiple interpretations. Further objecting, Interrogatory No. 3 is not reasonably calculated to lead to the discovery of admissible evidence and is not reasonably limited in time. Notwithstanding and without waiving said objection, Defendant indicates that she did work as a nurse at the Indiana State Prison in Michigan City, Indiana, from July 2018 through November 2019.

6

\* \* \*

>**Interrogatory No. 16:** What are Wexford Health Source, Inc.'s protocols for timely treatment of prisoners such as Tidwell?
>
>**ANSWER:** Objection. Wexford Health Source, Inc. is not a party to this litigation. Interrogatory No. 16 is not reasonably calculated to lead to the discovery of admissible evidence, as any policies or protocols will [not] make the alleged deliberate indifference of Defendant more or less likely.

The apparent purpose of Interrogatory No. 3 is to ascertain the identity the defendants' employer. The court understands that "Wexford" is vague in the sense that the company colloquially referred to as "Wexford" likely consists of multiple corporate entities, but the court disagrees that the identity of the defendants' employer is not reasonably calculated to lead to the discovery of admissible evidence. Interrogatory No. 16 provides one such example. Contrary to the defendants' objection to the request for protocols, a knowing violation of policies, procedures, protocols, internal guidelines, etc., could suggest malicious intent. *See Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009) ("[A]lthough violation of the prison's rule against public searches was not, by itself, a violation of the constitution, it was relevant evidence on which the jury could have relied to conclude that the searches were done with an intent to harass.").

**Consequently, the motion to compel is granted with respect to Interrogatories Nos. 3 and 16. Specifically, the defendants must identify their employer from July 2018 to November 2019 and should provide a substantive response to Interrogatory No. 16, including copies of any responsive protocols.**

Requests for Production

Tidwell argues that the defendants provided boilerplate objections rather than substantive answers to nearly all of the requests for production. In Requests for Production A, Tidwell requests his entire medical file from his time at the Indiana State Prison and at the Miami Correctional Facility.[2] In Request for Production H, he requests his requests for healthcare slips and medication history. In response, the defendants objected that the request was not reasonably limited in time and scope and produced medical records from February 2018 through July 2020. The defendants' objection is well-taken. Tidwell's medical records indicate that he has been incarcerated since 1992 and producing the medical records in their entirety would be disproportionate to the needs of this case. ECF 97-1 at 4. The defendants' chosen timeframe seems reasonable in light of the allegations, and Tidwell offers no indication that medical records outside this timeframe contain material information. Therefore, the motion to compel is denied with respect to Requests for Production A and H.

In Requests for Production B and C, Tidwell requests his grievance records from January 2019 through the present. The defendants object that these records are irrelevant because they have waived the issue of whether Tidwell has exhausted his administrative remedies. The court finds that grievance records could nevertheless lead to the discovery of admissible evidence. Assuming Tidwell filed grievances regarding his medical condition, these records could reveal information conveyed to the

---

[2] It appears that Tidwell transferred from the Indiana State Prison to the Miami Correctional Facility sometime around January 2020.

8

defendants by Tidwell and their responses. Further, Tidwell's chosen timeframe seems reasonable in light of the allegations, and defendants make no argument that producing these records would be unduly burdensome. **Therefore, the motion to compel is granted with respect to Requests for Production B and C.**

> In Requests for Production D and E, Tidwell issued the following requests
>
> d. All emails re: plaintiff from-to Wexford medical personnel.
>
> **RESPONSE:** Objection. This request is not reasonably limited in time or scope. Notwithstanding and without waiving said objection, Defendants indicate to see any correspondence within the medical records produced herewith.
>
> e. All text messages re: Tidwell between defendants, nurses, nurse practitioner Diane Thews, and Dr. Marthakis.
>
> **RESPONSE:** Objection. This request is not reasonably limited in time or scope. Notwithstanding and without waiving said objection, Defendants indicate none.

Defendants' objections regarding reasonable limitations are well-taken. As previously noted, Tidwell has a lengthy prison medical history, and Wexford is a national company employing medical staff at various correctional facilities throughout the country. Further, while the defendants appear to provide substantive responses, the unwieldy scope of the requests, in turn, makes it difficult to discern precisely what the defendants are responding to. **Consequently, the court will grant in part the motion to compel with respect to Requests for Production D and E. The defendants should produce any non-privileged emails and text messages regarding Tidwell to or from the defendants from February 2018 through July 2020.**

In Requests for Production F, G, I, J, K, and L, Tidwell asks for several categories of documents for the apparent purpose of investigating whether the defendants have engaged in misconduct resembling the allegations in this case. These categories include employment discipline, discipline imposed by State licensing agencies, grievances, and lawsuits. The defendants object that these request are not reasonably limited in time or scope and are irrelevant to the claims in this case. The court finds that this type of information is reasonably calculated to lead to discovery of admissible evidence. While prior bad acts are inadmissible as propensity evidence, they may be admissible for other purposes, including motive, knowledge, absence of mistake, or lack of accident. Fed. R. Evid. 404. Nevertheless, the court agrees that these requests are overly broad with respect to time and scope and should not include unsubstantiated complaints of misconduct. **In response to these discovery requests, the defendants should produce documentation of any disciplinary action taken by their employers or State licensing agencies against the defendants for failing to provide proper medical care since January 1, 2015. The defendants should also answer whether they have been successfully sued[3] for failing to provide proper medical care since January 1, 2015, and, if so, produce a list of the lawsuits, including the caption, cause number, and the court in which the lawsuit was filed.**

---

[3] For purposes of this order, the court defines a successful lawsuit as a lawsuit in which a court or jury found that the defendant was liable for a claim of medical malpractice or deliberate indifference to serious medical needs, or in which such a claim survived summary judgment and was later settled.

Finally, Tidwell requests "Wexford's Health Medical Policy" and "Wexford's Protocol's for Tidwell's Medical Issues." The defendants object that these requests were vague and are not reasonably limited in time or scope. These objections are well-taken as Wexford likely has policies pertaining to medical conditions, administrative issues, or periods of time that are entirely unrelated to the issues in this case and because Tidwell may similarly have medical issues that are unrelated to this case. However, as previously mentioned, a knowing violation of policies, procedures, protocols, internal guidelines, etc., could suggest malicious intent. **Consequently, the defendants should produce policies or protocols that specifically relate to the proper course of treatment for hernias, vomiting, constipation, and narcotic overdose in effect from July 2018 to November 2019.**

For these reasons, the court:

(1) GRANTS IN PART the motion to compel (ECF 100);

(2) ORDERS the defendants to serve and file response consistent with this Order by September 26, 2022;

(3) EXTENDS the deadline to respond to the motion for summary judgment to October 26, 2022; and

(4) DENIES the motion for sanctions (ECF 99).

SO ORDERED on August 26, 2022.

s/ Michael G. Gotsch, Sr.  
Michael G. Gotsch, Sr.  
United States Magistrate Judge